UNITED STATES of America, Plaintiff,

v.

David "Skip" KAUFFMAN, Defendant.

Crim. No. 84–00136–02.

United States District Court,
M.D. Pennsylvania.

Jan. 31, 1985.

Sally Lied, Asst. U.S. Atty., Harrisburg, Pa., for U.S.

William H. Naugle, Camp Hill, Pa., for Kauffman.

## MEMORANDUM

CALDWELL, District Judge.

Pending at this time is defendant's motion for a new trial, or in the alternative in arrest of judgment.

Defendant was adjudged guilty on November 13, 1984, of participating in a conspiracy to transport in interstate commerce "falsely made," forged or altered securities in violation of 18 U.S.C. § 2314. Specifically, the illegal activity involved the resetting (lowering) of the mileage shown on automobile odometers on used cars, the fraudulent securing of new title certificates showing the altered mileage, and the subsequent transportation of said certificates in interstate commerce in connection with resale of the vehicles.

Defendant does not dispute many of the allegations contained in the government's case, and raises only two issues, which are:

1) That the evidence was insufficient to prove him a member or conspirator in the plot shown by the government.

2) That in the event he was a conspirator, an essential element of the underlying offense charged was not proved. Although defendant admits the mileage shown on the new certificates of title was false, he contends said certif-icates were not "falsely made," as required by the statute.

*Defendant's participation in the conspiracy*

The government's evidence against the defendant consisted of the testimony of Richard Becker and Nadine Dellinger. Becker owned Imperial Motors and Dellinger worked for Becker as a clerk. The business of Imperial Motors consisted of buying automobiles at auto auctions and reselling them at other auto auctions. Becker and Dellinger both testified that Imperial Motors would buy late model autos with high mileage. Upon reconditioning these cars for later sale the odometers would be rolled back significantly. The cars with the mileage thus reduced would command a better price when offered for sale by Imperial Motors at other auctions.

Dellinger's actual participation in the conspiracy involved responsibility for the paperwork required to secure new certificates of title which would reflect the lower mileage. She testified that pursuant to instructions from Becker she falsified the mileage on the documents involved and secured the issuance of new title certificates, which reflected the incorrect and lower mileage as the true mileage. Becker admitted that he directed the rollbacks on hundreds of autos. Neither Becker or Dellinger testified directly that defendant was a conspirator by express agreement, or that he ever admitted being involved in their illegal scheme. Both testified, however, that during a period of about twenty (20) months defendant Kauffman regularly rolled back the odometers on autos purchased by Becker at auctions, and was paid $10.00 per car for his service. The testimony was that Becker, usually on a weekly basis, would prepare a list of the cars on which the odometers were to be altered, and would indicate thereon the lower mileage to be shown. Kauffman would obtain the lists and roll back the odometers according to the lower mileage indicated by Becker.

The defendant admitted that he turned back many odometers, but explained that he was unaware that he was doing any-

thing improper in following the directions given him by Becker. He explained that he believed the mileage indicated by Becker was correct for the particular car or engine and represented the actual mileage on the vehicle or the replacement engines which he said were installed in many of the vehicles. He also explained that other odometers were repaired and that he merely re-set them according to instructions from Becker, believing the mileage was correct for the vehicle.

As we indicated at trial, the credibility of defendant's explanations were for the jury. The government's evidence, although circumstantial, was sufficient to include him as part of the conspiracy. His participation was essential to the success of Becker's scheme and it stretches credulity to conclude that defendant could have altered odometers over a lengthy period of time without the realization that something was amiss. In *United States v. Ellis*, 595 F.2d 154 (3d Cir.1979) the court restated the often quoted test to be applied in determining the existence of a conspiracy

> The crime of conspiracy ... is seldom susceptible of proof by direct evidence. Proof of the crime may rest as it frequently does, on indirect or circumstantial evidence. The existence of a conspiracy may be inferred from evidence of related facts and circumstances from which it appears, as a reasonable and logical inference, that the activities of the participants in the criminal venture could not have been carried on except as the result of a preconceived scheme or common understanding.

Here the jury could readily conclude under all of the facts presented, that defendant was not a credible witness and that he knowingly participated in Becker's scheme. Although his role was secondary it was for the jury to determine if his actions were innocent as he contended, or knowing as strongly suggested by the circumstances. Viewing the evidence in the government's favor, as we are required to do, the defendant's argument cannot be accepted and he must be considered a co-conspirator in the illegal activity.

■ Defendant's second defense is that the car titles (which qualify as "securities"

under 18 U.S.C. § 2314) were not "falsely made" as required by the statute. If this contention is correct he is entitled to a judgment of acquittal since an essential element of the crime charged has not been shown. Defendant argues that although the mileage reflected in the "new" certificate of title may contain incorrect information, nevertheless the new certificate is not "falsely made", because it was made and issued by the Pa. Department of Transportation and is a genuine document.

This argument has been advanced in several cases involving the same issue. The question appears to have been resolved in defendant's favor in *United States v. Rudge*, 474 F.Supp. 360 (S.D.Iowa 1979) and *United States v. Sparrow*, 635 F.2d 794 (10th Cir.1980). In a later case, *United States v. Daly*, 716 F.2d 1499 (9th Cir. 1983), the court squarely and convincingly held that the term "falsely made" refers not to the act of issuing a certificate of title but to the broader concept of whether the titles were intended by the person securing them to falsely represent information reflected in them. See also *United States v. Mitchell*, 588 F.2d 481 (5th Cir.1979). We believe the Daly decision to be the correct analysis of the intent and meaning of 18 U.S.C. § 2314 and it expresses the position we take on this point.

Finding no merit in defendant's post trial motions we will direct that he appear for sentencing.